UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERYL DIANE ZUEGER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. C14-180-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

Sheryl Diane Zueger seeks review of the denial of her Supplemental Security Income, period of disability, and Disability Insurance Benefits applications. She contends the ALJ erred by improperly rejecting her testimony; rejecting the medical opinions of Drs. Kathleen Anderson, Matthew Comrie, Edward Beaty, and Alnoor Virji; and finding she had no severe mental impairments at step two. Dkt. 14. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C § 405(g).

## BACKGROUND

Ms. Zueger is currently 60 years old, has a bachelor's degree, and has worked as a general clerk, data entry clerk, and receptionist. Tr. 47, 53; Dkt. 35 at 34-35. In September 2010

REPORT AND RECOMMENDATION - 1

1  and March 2011, she applied for benefits, alleging disability as of November 17, 2004.  Tr. 25.

2  Her applications were denied initially and on reconsideration.  Tr. 25.  The ALJ conducted a

3  hearing on July 31, 2012, finding Ms. Zueger not disabled.  Tr. 36.  As the Appeals Council

4  denied Ms. Zueger's request for review, the ALJ's decision is the Commissioner's final decision.

5  Tr. 1-5.

## THE ALJ'S DECISION

7  Utilizing the five-step disability evaluation process,[1] the ALJ found:

8  **Step one:**  Ms. Zueger had not engaged in substantial gainful activity since November 17, 2004.

10  **Step two:**  Ms. Zueger had a severe impairment of degenerative disc disease of the lumbar spine.

11  **Step three:**  The impairment did not meet or equal the requirements of a listed impairment.[2]

13  **Residual Functional Capacity:**  Ms. Zueger had the residual functional capacity to perform light work with the following restrictions:  she could lift 20 pounds occasionally and 10 pounds frequently, she could stand/walk and sit for six hours in an eight-hour day;

14  she could never climb ladders, ropes, or scaffolds; and she could occasionally climb ramps or stairs.  She could never crawl, occasionally crouch and kneel, and frequently

15  stoop.

16  **Step four:**  Ms. Zueger could perform her past work.

17  **Step five:**  Alternately, as there are jobs that exist in significant numbers in the national economy that Ms. Zueger can perform, she is not disabled.

Tr. 25-36.

## DISCUSSION

### A.    Credibility

Ms. Zueger contends the ALJ erred in her adverse credibility finding.  Dkt. 14 at 16.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1  Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing
2  reasons to reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.
3  2007).

4      **1.**    *Activities of Daily Living*

5      The ALJ discounted Ms. Zueger's credibility because he found that her allegations of
6  disabling back limitations were inconsistent with her daily activities.  Tr. 31.  Ms. Zueger
7  testified she can sit for an hour at a time and stand for a short time before needing rest, she can
8  walk for a block, she can bathe and dress herself, and she can maintain her 200 square foot
9  home.  Tr. 56, 63; *see also* Tr. 461.  She testified she drives two times per week for one to two
10 hours.  Tr. 49.  She also reported she took a trip to Hawaii.  Tr. 459.

11     The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried
12 on certain daily activities, such as grocery shopping, driving a car, or limited walking for
13 exercise, does not in any way detract from her credibility as to her overall disability.  One does
14 not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d 1044,
15 1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, a
16 claimant's reported daily activities can form the basis for an adverse credibility determination if
17 they consist of activities that contradict the claimant's "other testimony"; or that are transferable
18 to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d
19 1273, 1284  n.7 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)
20 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these
21 activities have any bearing on Claimant's credibility").  Ms. Zueger's activities are not clearly
22 inconsistent with her testimony, and the record regarding her trip to Hawaii is too sparse to draw
23 any conclusions otherwise.   Nor is there any discussion in the record suggesting these activities

REPORT AND RECOMMENDATION - 3

are transferable to a work setting.  Accordingly, the ALJ erred in discounting Ms. Zueger's credibility on this basis.

### 2. *Lack of Objective Medical Evidence*

The ALJ also found that the objective medical evidence did not support Ms. Zueger's allegations of "a disabling level of physical functioning." Tr. 31.  In considering a plaintiff's subjective pain testimony, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, medical evidence is "still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the ALJ found Ms. Zueger had a severe impairment of degenerative disc disease of the lumbar spine.  Tr. 27 (*citing* 2010 MRI showing a "diffuse disc bulge.  There was a tear at L-5 with possible nerve root impingement (Ex. 14F/2; 5F/2; 4F/1).").  Thus, even assuming the medical evidence did not fully corroborate her alleged limitations, that reason alone is insufficient to support the ALJ's adverse credibility finding.  The ALJ's only other reason for finding Ms. Zueger less than fully credible — her activities of daily living — is not supported by substantial evidence. Consequently, the ALJ's ultimate credibility finding is not supported by the record.

The ALJ's failure to provide clear and convincing reasons supported by substantial evidence to discount Ms. Zueger's credibility was harmful error to the extent she testified to limitations that were not included in the RFC.  *See* SSR 96–8p (RFC is the most a claimant can do considering his or her limitations or restrictions); *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir.2012) (error is harmful when it is of consequence to the ultimate nondisability

REPORT AND RECOMMENDATION - 4

determination). On remand, the ALJ should reassess the credibility of Ms. Zueger's statements concerning the limiting effects of pain, her RFC, and steps four and five of the sequential evaluation.

### 3. *Inconsistent Statements*

The Commissioner argues the ALJ also cited inconsistent statements made by Ms. Zueger to undermine her credibility. Dkt. 15 at 11 (*citing* Tr. 28). The ALJ's observation, however, was made during his discussion at step two, separate and apart from his discussion regarding Ms. Zueger's credibility. *Compare* Tr. 28 *with* Tr. 30-31. Thus, the ALJ's discussion of Ms. Zueger's statements was most likely made to highlight evidence supporting the ALJ's rejection of Ms. Zueger's severe mental impairments, not to discount her testimony. The Commissioner's argument is thus an improper post hoc rationalization upon which the Court cannot rely to affirm the ALJ. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir.2009) (Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Additionally, implicit rejections are generally insufficient, particularly where, as here, the ALJ is required to provide clear and convincing reasons for discounting Ms. Zueger's testimony. Accordingly, the Court finds the only reasons the ALJ gave for rejecting Ms. Zueger's testimony were the two reasons discussed above, which warrant reversal.

**B.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

Ms. Zueger argues the ALJ erred in discounting the opinions of examining doctor Kathleen Anderson, M.D.; state agency medical consultants Matthew Comrie, Psy.D., Edward Beaty, Ph.D., and reviewing doctor Alnoor Virji, M.D. When an examining doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester v.*

REPORT AND RECOMMENDATION - 5

*Chater*, 81 F.3d 821, 830 (9th Cir. 1988).  When an examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The Court recommends affirming the ALJ's decision regarding the medical opinion evidence.

      **1.**     ***Dr. Kathleen Anderson, M.D.***

Dr. Anderson interviewed Ms. Zueger in August 2011, and subsequently completed a psychiatric report in which she opined Ms. Zueger likely suffered from bipolar disorder; had a GAF score of 46; and could not successfully manage employment, persist at tasks, or complete tasks in a timely fashion in a work setting.  Tr. 470.  Dr. Anderson noted Ms. Zueger spoke nonstop if not interrupted, it was "extremely difficult" to get a clear picture of her historical explanations, she had tangential thinking, she appeared paranoid and had delusional thoughts, and there was a "grandiose quality to her thinking."  Tr. 465-70.  Dr. Anderson also recorded that partway through the interview, Ms. Zueger admitted she had not taken her medication that day because she wanted to appear in an unmedicated state.  Tr. 469.

The ALJ gave "little weight" to Dr. Anderson's August 2011 opinion because Ms. Zueger's reports at the examination were not supported by the record.  Tr. 28.  An ALJ may properly reject an opinion that is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]"  *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Treatment notes from early March 2011 indicate that Ms. Zueger exhibited symptoms similar to those described by Dr. Anderson:  paranoia, delusions, stress, depression, and possible bipolar disorder.  Tr. 473-74.  On March 15, 2011, Dr. Wayne Katon prescribed perphenazine, an antipsychotic.  Tr. 483.  On March 28, 2011, Ms. Zueger reported "huge improvement" in her anxiety levels, and stated she was sleeping better.  Tr. 487.  Her doctor noted she was

REPORT AND RECOMMENDATION - 6

1  "significantly calmer without obvious anxiety" and increased her dose of perphenazine.  Tr. 488.
2  On April 11, 2013, Ms. Zueger reported her medications were helping her relax, though she was
3  still experiencing some anxiety.  Tr. 491.  A few days later, her anxiety was reported as "still
4  pretty high," but she had less paranoia.  Tr. 493.  The doctor indicated her paranoia was "mild."
5  *Id.*  By April 19, 2011, Ms. Zueger reported she was able to function more, be more social, and
6  was less hypervigilant.  Tr. 496.  She was described as being "engaged in dialogue," with linear
7  thinking.  Tr. 503.  In July 2011, Ms. Zueger's antipsychotic medication was renewed and she
8  obtained a refill of her anxiety medication.  Tr. 509.

9        Ms. Zueger contends it is improper to conclude substantial evidence supports the ALJ's
10  decision because she had "little focused mental health treatment prior to March 2011."  Dkt. 16
11  at 2.  But it is Ms. Zueger's burden to prove disability through the evidence she provides.  A
12  sparse  record does not excuse her from that burden; if anything, it tends to support the ALJ's
13  contention that her mental impairments were not severe.

14        The ALJ also discounted Dr. Anderson's opinion because Ms. Zueger had not taken her
15  medication before visiting the doctor, which the ALJ found did "not represent the full extent of
16  her capabilities."  Tr. 28 (*citing* Tr. 436[3]).  Ms. Zueger takes issue with the argument, contending
17  she only failed to take hydroxyzine, not her other medications.  Dkt. 14 at 12; Dkt. 16 at 3.
18  "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's
19  conclusion that must be upheld."  *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th
20  Cir. 1999) (*citing Andrews*, 53 F.3d at 1041).  Ms. Zueger may offer a reasonable interpretation
21  of the record, but the ALJ's conclusion was also reasonable.  On this record, the Court cannot
22  say Mr. Zueger's failure to take her medication — for purposes the record describes as wanting

23  [3] It is unclear why the ALJ cites to this record, as it is irrelevant to Dr. Anderson's evaluation of Ms. Zueger.

REPORT AND RECOMMENDATION - 7

to appear in an unmedicated state — had no effect on her presentation. Because the ALJ provided specific and legitimate reasons to discount Dr. Anderson's opinion, the Court recommends affirming the ALJ's decision.

### 2.  *Dr. Matthew Comrie, Psy.D., and Dr. Edward Beaty, Ph.D.*

Ms. Zueger contends the ALJ erred in rejecting two state agency examining physicians' opinions regarding her inability to be around others, her reduced concentration, and her stress intolerance. Dkt. 14 at 13. In particular, she contends that the ALJ's disregard for these doctors' opinions that her "levels of anxiety and occasional need for redirection" would "reduce sustained concentration and stress tolerance"[4] was error because the VE testified that if she were limited to low stress jobs, she would not be able to perform her past relevant work. Dkt. 14 at 14. The argument lacks merit.

First, Ms. Zueger misinterprets the thrust of the opinions. In arguing the ALJ ignored the doctors' opinions she could only have incidental contact with the public, she ignores the fact that both doctors opined (and the ALJ noted) that Ms. Zueger's moderate limitations were "not to the degree as to prevent [her] ability to engage [in] familiar work activity within an average schedule and work week the majority of the time." Tr. 88; *see also* Tr. 28. Even assuming Ms. Zueger's interpretation of the evidence may be reasonable, the Court must affirm. *See Morgan*, 169 F.3d at 599.[5]

The ALJ also gave "little weight" to the findings that Ms. Zueger had even "moderate"

---

[4] Curiously, the consulting examiners' opinions are repeated verbatim. *Compare* Tr. 87-88 *with* Tr. 137-38.

[5] Ms. Zueger also argues that the doctors' statements that she could work "the majority of the time" is significant because "Dr. Comrie recognized there would be occasions where Plaintiff would be unable to engage in work activity due to her anxiety and chronic back pain." Dkt. 16 at 6 (*citing* Tr. 88). Again, while Ms. Zueger's interpretation of the evidence may be reasonable, it is pure conjecture; the ALJ's interpretation was also reasonable. Thus, the Court must affirm the ALJ. *See Morgan,* 169 F.3d at 599.

REPORT AND RECOMMENDATION - 8

limitations in her ability to work with others, because she "testified that she attended school, was able to work in group projects, spoke to her mother every day, and had some good friends who came to visit her several times a week." Tr. 29.  In so doing, the ALJ properly evaluated the doctors' findings, finding them inconsistent with Ms. Zueger's testimony and her reports of social functioning.  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Additionally, Ms. Zueger has failed to demonstrate harmful error because the VE opined she could perform certain alternate jobs if "low stress" was accommodated into the hypothetical.[6]  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where limitations considered at step four); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error").  The ALJ found Ms. Zueger could perform the jobs of semiconductor bonder (DOT #726.685-066), assembler (DOT #706.684-022), and basket filler (DOT #529.687.010), in addition to her past relevant work. Tr. 36.  These

---

[6] In a footnote, Ms. Zueger states "the ALJ did not meet his burden of production by citation to these jobs.  As Plaintiff has been over 55 since prior to her date last insured, he may not meet his burden of production by citation to sedentary or light unskilled jobs.  In order to find Plaintiff 'not disabled' at step five he must find that she has skills transferable to light or sedentary work."  Dkt. 14 at 3 (*citing Distasio v. Shalala*, 47 F.3d 348 (9th Cir. 1995)); *see also* Dkt. 16 at 7.  Ms. Zueger's conclusion has no support.  In *Distasio*, the VE testified that she believed the claimant could perform only sedentary jobs. *Distasio*, 47 F.3d. at 349.  Taking into consideration the claimant's age, education, and skills, and limited by the sedentary jobs classification, the claimant should have been found disabled.  *Id*.  However, the ALJ applied the wrong job classification, using a light work category instead of the sedentary category, and applied the classification to the wrong grid, resulting in an erroneous finding that the claimant was not disabled. *Id*.  Ms. Zueger has not explained how that case is analogous here.

REPORT AND RECOMMENDATION - 9

jobs were based on an alternative RFC/hypothetical posited by the ALJ at Ms. Zueger's hearing, wherein the ALJ altered the original RFC by adding a "low stress situation . . . I mean, only occasional changes in the work setting, no fast-paced production required." Tr. 72-74. Ms. Zueger does not address this, and thus does not explain how the ALJ's alternative RFC fails to account for the limitations she claims affect her.

In sum, to the extent the ALJ rejected the opinions of examining doctors Comrie and Beaty, the ALJ's decision was clear and convincing and based on substantial evidence in the record as a whole. The Court recommends affirming the ALJ.

### 3.   *Dr. Alnoor Virji, M.D.*

Reviewing doctor Alnoor Virji, M.D., opined Ms. Zueger could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; occasionally climb ramps and stairs; never climb ladders/ropes/scaffolds; frequently stoop, kneel, crouch, and crawl; stand and/or walk for a total of two hours in a work day, and sit for the same. Tr. 118. The ALJ assigned "significant weight" to Dr. Virji's opinions regarding postural and lifting abilities, but only "little weight" to the doctor's opinion regarding sitting limitations. Tr. 34.

The ALJ rejected Dr. Virji's opinion because it was inconsistent with the opinion of examining physician Dr. Gaffield, D.O.[7] Tr. 34. Opinions from non-examining medical sources are given less weight than treating or examining doctors. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). In July 2011, Dr. Gaffield assessed Ms. Zueger's functional capacity and found she could walk/stand and sit for six hours. Tr. 463. An ALJ may properly "reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v.*

---

[7]Doctors of Osteopathic Medicine (D.O.) are acceptable medical sources pursuant to 20 C.F.R. § 404.1513(a).

REPORT AND RECOMMENDATION - 10

*Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

Ms. Zueger's other arguments that Dr. Virji's opinion should be given greater weight because he was able to "review all of the records, including Dr. Gaffield's opinion," and because Dr. Virji's opinion is "more consistent" with the opinions of Dr. Brydon and Dr. Brown, are not persuasive. *See* Dkt. 14 at 16. First, Dr. Brown's opinion is not mentioned by Dr. Virji, and while Dr. Brydon's opinions are mentioned, Dr. Virji himself stated he gave these opinions "other weight" because they were unsupported by the evidence. Tr. 118. Additionally, these opinions were all rejected by the ALJ for specific and legitimate reasons, which Ms. Zueger does not challenge. *See* Tr. 33. Ultimately, it is the ALJ who is "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ also discounted Dr. Anderson's opinion because it was inconsistent with Ms. Zueger's trip to Hawaii and her reports of driving herself and friends around town. Tr. 34. These reasons were invalid, as the ALJ did not explain how sitting for two hours was inconsistent with Ms. Zueger's activities. *See supra*, Section A. Nevertheless, the inclusion of invalid reasons does not affect the validity of the ALJ's ultimate conclusion that Ms. Zueger was not disabled. *See Carmickle*, 533 F.3d at 1162. Because substantial evidence supports the ALJ's valid reasons for discounting Dr. Virji's opinion, the Court concludes the ALJ's invalid reasons were harmless and recommends affirming the ALJ's rejection of the opinion.

**C.     The ALJ Did Not Err at Step Two**

Ms. Zueger contends the ALJ erred at step two by failing to find she had severe mental impairments after improperly rejecting the opinions of Dr. Anderson, Dr. Comrie, and Dr.

REPORT AND RECOMMENDATION - 11

1  Beaty.[8]  Dkt. 14 at 10.  As the Commissioner notes, Ms. Zueger's argument, as presented, hinges

2  on the propriety of the ALJ's evaluation of the medical opinion evidence.  Dkt. 15 at 20.  As

3  discussed above, the Court finds the ALJ properly rejected the medical opinions at issue.

4  Nevertheless, the Court reviews the ALJ's step two analysis and concludes any error was

5  harmless.

6       At step two, Ms. Zueger has the burden of proof to show that (1) she has medically

7  determinable impairments; and (2) her medically determinable impairments are severe.  *See*

8  *Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); 20 C.F.R. § 404.1520(c).  An impairment is

9  medically determinable if it results from anatomical, physiological, or psychological

10  abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic

11  techniques.  20 C.F.R. § 404.1508.  An impairment is severe if it significantly limits the

12  claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520;

13  404.1521.  "Basic work activities" refers to "the abilities and aptitudes necessary to do most

14  jobs."  20 C.F.R. § 404.1521(b).

15       In March 2011, Ms. Zueger met with Kyla Brydon, M.D., for paranoia, delusions, and

16  anxiety.  Tr. 472.[9]  She was referred to Wayne Katon, M.D., in psychiatry, who diagnosed

17  paranoid psychosis.  Tr. 483.  In August 2011, Ms. Zueger was evaluated by Dr. Kathleen

18  Anderson, M.D., who diagnosed bipolar disorder, rule out schizoaffective disorder, currently

---

[8] The Court notes Ms. Zueger mentions the opinion of Dr. Brydon, but fails to make any argument addressing that opinion.  Dkt. 14 at 10.  Claims that are unsupported by explanation or authority may be deemed waived.  *See Avila v. Astrue*, No. C07–1331, 2008 WL 4104300 at *2 (E.D. Cal. 2008) (citing Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 923–24 (9th Cir.1996) (party who presents no explanation in support of claim of error waives issue), and *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

[9] Dr. Brydon assessed paranoia and delusions, and stated she "[c]annot R/O bipolar disorder." Tr. 474.  She referred Ms. Zueger to a psychiatrist "for help with diagnostic clarity and medication initiation." *Id.*

REPORT AND RECOMMENDATION - 12

manic. Tr. 469. The ALJ found Ms. Zueger's medically determinable impairment of anxiety caused no more than minimal limitations in her ability to perform basic mental work activities (and was therefore non-severe), because she took medication to alleviate it. Tr. 28. He also noted that she "was also thought to have persecutory delusions and diagnosed with bipolar disorder." Tr. 28 (*citing* Tr. 465-71). He further observed that she did not allege any limitations from bipolar disorder at her hearing, she reported "her anxiety and paranoia are better on . . . perphenazine," and that she had improved function with increased social abilities and less hypervigilance on her medication in April 2011. *Id.* (*citing* Tr. 496).[10] Finally, the ALJ noted Ms. Zueger's treatment notes indicated she was well dressed and groomed, with good hygiene; she spoke in a normal tone and speed; had normal expressions of emotions; her emotions were appropriate to the content; her medication continued to be helpful; and her anxiety and paranoia continued to improve. Tr. 28. Though the ALJ's decision is hardly a model of clarity at step two, the ALJ acknowledged anxiety, paranoia/delusions, and bipolar disorder were impairments.

     A mental impairment is considered not severe if the degree of limitation in the functional areas of activities of daily living; social functioning; and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). In assessing the severity of Ms. Zueger's functional limitations, the ALJ did not err. The ALJ found Ms. Zueger did not meet the listing requirements of paragraph B, because she had only mild limitation in activities of daily living; social functioning; and concentration, persistence, or pace. Tr. 29. He also found no episodes of decompensation. *Id.* Ms. Zueger does not challenge these findings and does not address any

---

[10] Dr. Katon noted "Patient reports her anexity and paranoia are better on 8 mg of perphenazine. She is able to function more and be more social and she is less hypervigilant." Tr. 496.

REPORT AND RECOMMENDATION - 13

additional discussion she believes was required by the ALJ at this step.[11] As she points to no evidence indicating marked degrees of limitation, any error is harmless. *See Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). Thus, having failed to meet her burden of proof at step two, the Court recommends affirming the ALJ's step two findings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess Ms. Zueger's credibility, and as appropriate, her RFC, and steps four and five of the sequential evaluation.

//
//
//
//
//
//
//
//
//

---

[11]The Court also notes that both of the state agency doctors Ms. Zueger contends were improperly discounted— Drs. Comrie and Beaty— assessed, at most, only moderate limitations. *See* Tr. 87-89; 138-39. Moreover, both doctors rejected the opinion of Dr. Anderson. *Id.*

REPORT AND RECOMMENDATION - 14

1  A proposed order accompanies this Report and Recommendation.  Objections, if any, to
2 this Report and Recommendation must be filed and served no later than **July 23, 2014.**  If no
3 objections are filed, the matter will be ready for the Court's consideration on **July 24, 2014**.  If
4 objections are filed, any response is due within 14 days after being served with the objections.  A
5 party filing an objection must note the matter for the Court's consideration 14 days from the date
6 the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The
7 failure to timely object may affect the right to appeal.

8  DATED this 9th day of July, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge